**Lynn L. BROWN, et al., Plaintiffs,**

v.

**Donald A. HERMANN, et al.,
Defendants.**

**No. C–82–755 RPA.**

United States District Court,
N.D. California.

Aug. 11, 1982.

Flynn & Stewart, San Francisco, Cal., for plaintiffs.

G. Douglas Day, Legal Dept., American Sav. & Loan Ass'n, San Jose, Cal., for American Sav.

G. William Snipes, Landels, Ripley & Diamond, San Francisco, Cal., for defendant Donald A. Hermann.

## OPINION AND ORDER

AGUILAR, District Judge.

Between 1973 and 1980, Robert M. Lauder and Donald A. Hermann, defendant herein, established six trust savings accounts at defendant American Savings and Loan Association. Lauder and defendant were named as co-trustees on each of these six accounts, and one of Lauder's three sisters, plaintiffs herein, was named as the sole beneficiary of each of the six accounts. The declarations of trust for the accounts provided that Lauder and defendant could revoke the trusts, or any part of them, by withdrawing funds from the trusts.

In late December of 1981, Lauder died. On February 23, 1982, Lauder's three sisters filed an action in this court to establish the trusts and to receive their interests in the trust savings accounts. The Court has entered a preliminary injunction enjoining defendant Hermann from withdrawing, pledging or hypothecating any monies on deposit in the accounts pending the outcome of this litigation. The Court found that irreparable harm was alleged by plaintiffs as defendant would likely not be able to respond in money damages if he liquidated the trusts and these actions were later determined to be wrongful. The Court also found sufficiently serious questions to be deserving of litigation.

Defendant Hermann now moves for summary judgment contending that there is no genuine issue as to any material fact, and that he is entitled to judgment. Defendant asserts that both the trusts instruments, and the intentions of he and Lauder, indicate that upon Lauder's death, defendant was to have use of the trust account funds, and that such funds would only pass to plaintiff sisters upon the deaths of both Lauder and defendant.

■ By their actions, Lauder and defendant established what are commonly referred to as "Totten," or savings account, trusts. In establishing such a trust, the depositor deposits money in a savings bank account to the credit of the depositor, in trust for a beneficiary. A Totten trust is not really a trust, but is an exception to the law of testamentary disposition. *Estate of Collins,* 84 Cal.App.3d 928, 932, 149 Cal.Rptr. 65 (1978). Upon the death of the trustee, the money in the savings account goes directly to the beneficiary without the necessity of probate. Totten trusts are recognized and accepted in California. *Id.*

■ However, a Totten trust is a *tentative* trust, as the depositor may revoke the trust or withdraw interest or principal from the savings account during his or her life. Thus, the interest of the beneficiary can be revoked, and is subject to defeasance by withdrawal of portions of the funds from the account. Bogert, Law of Trusts, § 20, p. 46 (Hornbook Series). Most bank instruments establishing such trusts provide that such activities by the trustee are authorized.

In the present case, the following appeared as the "Declaration of Trust" signed by Lauder and defendant with respect to each of the six accounts:

We hereby declare that the savings account ... designated ... and all additions thereto made at any time in the future, shall be held by us or the survivor or survivors of us, in trust, for the Beneficiary above named, reserving to us, however, any interest not credited to said account, and the right at any time to revoke this trust, in whole or in part, by

withdrawing all or part of the funds in said account or by executing and delivering . . . a notice of intention to withdraw all or part of the funds in said account. In the event of the death of the last survivor of us, Association [American Savings] may pay the whole or any part of said account to Beneficiary . . . . If no Beneficiary should be living at the time of death of the last survivor of us, Association may pay the whole or any part of said account to the personal representatives of such last survivor.

For four of the trusts, the reverse side of the signature card provided as follows:

"The undersigned, as joint trustees for Beneficiary named on the reverse side, hereby apply for a withdrawable investment certificate account in AMERICAN SAVINGS and LOAN ASSOCIATION ("Association" herein) and for issuance to them, as joint trustees for Beneficiary, under the trust created by Declaration of Trust set forth on the reverse side hereof, of a withdrawable investment certificate subject to the terms and conditions printed thereon.

Association is authorized to act, without further inquiry, on any writings bearing the signature of *either* of the undersigned in all matters relating to said account, including but not limited to withdrawals from said account and the pledging of said account for any loan made to the undersigned *or any one of them.* If not otherwise designated above, Association may act upon the signature of *any one of the undersigned.* Any and all checks for interest not credited to said investment certificate account shall, in form, be payable to the undersigned in alternative, and shall be mailed to the address of the person whose signature first appears below, and any and all notices from the Association to the undersigned shall also be mailed to said address. In the event of the death of any of the parties to said account, the survivor(s) will notify the Association at once. The Association is authorized to accept and credit to said account any and all checks payable to any or all of the undersigned when endorsed by any of the undersigned, or by one for the other or others, or if presented unendorsed to supply the required endorsement. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to said account including all expenses incurred with said account." (Emphasis added.)

On the reverse side of the signature cards of the two other trusts, the following is provided:

"As joint tenants with right of survivorship and as Trustees for the Beneficiary named above under the trust specified above, created pursuant to the Declaration of Trust set forth on the reverse side hereof, we hereby apply to establish a savings account with American Savings and Loan Association ('Association' herein) and agree that said account shall be governed by the bylaws of Association and by the following provisions:

Association is authorized to act, without further inquiry, on any writings bearing the signature of *either* of the undersigned in any matters relating to said account, including but not limited to withdrawals from said account and the pledging of said account for any loan made to the undersigned *or any one of them.* If not otherwise designated above, Association may act upon the signature of *any one of the undersigned.*

All checks in connection with said account shall, in form, be payable to the account holders as designated above, *or to any one of them,* and if mailed may be mailed to the address most recently provided to the Association of the person whose signature first appears below, and all notices from Association to the undersigned may also be mailed to said address. In the event of the death of any of the undersigned, the survivor or survivors will immediately notify Association. Association is authorized to supply any endorsement on any check or other instrument tendered for this account and is hereby relieved of any liability in connection with the collection of such items provided

Association acts without negligence. Withdrawals may not be made on account of such items until collected, and any amount not collected may be charged back to said account, including all expenses incurred in connection with said account." (Emphasis added.)

In the more common situation, the depositor names himself as trustee on behalf of the beneficiary, and until death may revoke the trust or withdraw funds from the trust savings account. If anything is left in the account at the trustee's death, the beneficiary receives it. The present case is unique in that there are co-trustees of the savings account trust. It appears that by these instruments Lauder and defendant created a joint tenancy savings account which was also to operate as a Totten trust. It is this element of uniqueness that has led to the controversy in the present case.

Plaintiffs contend that upon the death of their brother, the funds in the savings accounts were to pass to them. Defendant contends that he remains entitled to use the funds in the account, and only upon his death, (i.e., both trustees have died), do the plaintiff beneficiaries become entitled to what may be remaining in the savings accounts.

No case has been found addressing the situation of joint depositors to a savings account trust. There, therefore, is no direct legal authority for determining the rights of a second depositor to a savings account trust when the first depositor has died. Also, the instruments signed by Lauder and defendant do not specifically provide for this situation.

■ In the absence of this direct legal authority, the Court must rely on the intent of Lauder and defendant in setting up the savings account trusts to determine who is now entitled to the funds in the accounts. The intent of the trustor is the paramount rule of construction of a trust instrument. *California First Bank v. Townsend,* 124 Cal. App.3d 922, 930, 177 Cal.Rptr. 723 (1981). And both parties in this action appear to agree that intent is the key to resolution of the present dispute.

■ Due to the fact that Lauder, the prime depositor and trustor with respect to these accounts is dead, the evidence on the question of intent must include inferences as well as direct evidence. The evidence and inferences presented by the parties convinces the Court that there is no genuine issue as to any material fact and that defendant is entitled to judgment in his favor as a matter of law. (F.R.C.P. 56(c).)

The trust instruments provide that the accounts shall not be payable to the beneficiary until the death of the last survivor, and that either depositor may withdraw funds from the accounts. The trust instruments for two of the accounts provide a "right of survivorship" in each of the depositors. Defendant testified at his deposition that the accounts were set up as they were so that if something happened to both of them, the monies could go to the sisters without going through probate (Lauder and defendant were roommates who traveled extensively together), but that he was to have use of the funds, if necessary, if Lauder were to die first. Defendant further testified that he and Lauder had also set up other savings account trusts containing his earnings, and that all of the accounts were a way for Lauder and defendant to take care of each other without the necessity of probate. Defendant also testified that his savings plan, stock plan and life insurance policy, all obtained through his employment, each named Lauder as beneficiary.

It is quite clear that Lauder and defendant intended to take care of each other upon the death of either, and that they accordingly so arranged their financial affairs. As Lauder's will only left defendant $15,000, Lauder intended that the funds in the six accounts be available to defendant if he needed them. Lauder did not intend that upon his death the funds in these accounts would pass immediately to the sisters.

Plaintiff sisters have failed to raise triable issues of fact otherwise. The affidavit of a sister that Lauder at one time said that he had set some money aside for the sisters

that they would receive on his death is of no legitimate weight. This statement by Lauder was made years ago, was not specific as to where this money was, and was not made to the sister to whom Lauder intended to leave the bulk of his money to, after providing for defendant. Additionally, this statement is not inconsistent with defendant's position: there is money set aside for the sisters, but they will only become entitled to it after both Lauder, and defendant, die.

Defendant's own statement that he wants to maintain the accounts in trust for the sisters until he dies, is also not supportive of plaintiffs' position, and is consistent with defendant's position. Defendant is simply being respectful of his friend's (Lauder's) wishes that the funds go to the sisters upon his death, and that he will not frivolously use them up. However, the funds are available to him if he honestly needs them.

The Court therefore concludes that there is no triable issue of fact that Lauder (and defendant) intended, in setting up the six savings account trusts, to permit defendant to withdraw funds from these accounts if Lauder were to predecease defendant, and that the plaintiff beneficiaries were entitled to the funds in the accounts only once both Lauder and defendant had died. Defendant therefore is entitled to summary judgment in his favor.

Good cause appearing therefor, IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED.